IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Phillip Tate,                          :

             Plaintiff,                :    Case No. 2:06-cv-0047

    v.                                 :    JUDGE SMITH

Joe Williams, et al.,                  :    MAGISTRATE JUDGE KEMP

             Defendants.               :


REPORT AND RECOMMENDATION

On January 9, 2006, pro se prisoner Phillip Tate filed a
complaint in this Court alleging violations of his constitutional
rights under 42 U.S.C. §1983.  On March 21, 2006, defendants Joe
Williams, Inspector of Institutional Services at Noble Correctional
Institution ("NCI"); Jose Ventosa, M.D., medical director at NCI;
Sergeant Tony Wittekind, hearing officer at NCI; Jeffrey Wolfe,
Warden at NCI; Michelle Eberlin, Warden at Belmont Correctional
Institution ("BCI"); William Eleby, Chief of Bureau of
Classification and Reception for the Ohio Department of
Rehabilitation and Correction ("ODRC"); and Reginald Wilkinson,
Director of ODRC (collectively known as "defendants") filed a
motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6).  The motion is
fully briefed and is now ripe for decision.  For the following
reasons, it will be recommended that the motion to dismiss be
granted in part and denied in part.

I.

The following facts are taken from the complaint.  Mr. Tate is
a prisoner in the ODRC system currently serving his sentence at
Ross Correctional Institution ("RCI").  In June 2004, Mr. Tate sent
a personal letter to Terry Collins, the Deputy Director of the
ODRC, complaining about the actions and conduct of the NCI Deputy
Warden.  As a result of sending the letter, Mr. Tate was placed in

punitive segregation and received a conduct report for the use of inappropriate language in the letter. A hearing was held concerning Mr. Tate's letter. Mr. Tate was denied the use of his requested witnesses and was sentenced to five days in the disciplinary cell.

In October 2005, Mr. Tate sent a personal letter to Dr. Ventosa concerning alleged racial discrimination in medical treatment. Upon reading the letter, Dr. Ventosa issued a conduct report against Mr. Tate for disrespecting a staff member. A hearing was held and Mr. Tate was again denied the opportunity to present witnesses. The hearing officers cited Mr. Tate's use of inappropriate language and sentenced him to fifteen days of commissary restriction.

In March 2005, Mr. Tate was transferred to BCI without any notice or hearing and was placed on security control status within BCI's infirmary under segregation conditions. While at BCI, Mr. Tate was brought before a Rule Infractions Board ("RIB") for an investigation into whether he attempted to establish a relationship with an officer. According to Mr. Tate, he was denied the right to present witnesses and documentary evidence. Mr. Tate was sentenced to fifteen days in the disciplinary cell and placed on local control. As a result of this conduct and the RIB's action, Mr. Tate's parole release was rescinded, and Mr. Tate was ordered to serve out the remaining portion of his criminal sentence.

Mr. Tate was held in the BCI infirmary from March 18, 2005 to May 18, 2005 pursuant to Ms. Eberlin's request. Additionally, Mr. Tate was on segregated conditions status and was denied request for out-of-cell exercise by Ms. Eberlin. In April 2005, Mr. Tate filed a formal grievance with the chief inspector against Ms. Eberlin for her denial of Mr. Tate's request for exercise. The chief inspector disposed of the grievance in October 2005.

From March 19, 2005 to May 31, 2005, Mr. Tate requested and

2

was denied the use of dental floss.  Accordingly, on May 14, 2005, Mr. Tate filed an informal complaint with Ms. Eberlin claiming that he was suffering from pain in his mouth due to the lack of his ability to floss.  A dentist examined Mr. Tate's teeth and gums through a window and concluded that Mr. Tate was unharmed. Subsequently, Mr. Tate filed a formal grievance against Ms. Eberlin challenging "the [d]epartment wide absence of a formal policy authorizing access to dental floss or an equivalent to plaintiff and other inmates confined to" segregated conditions or disciplinary cells.  (Complaint at ¶90.)

On April 26, 2005, Mr. Eleby upgraded Mr. Tate's security status from medium to close and approved Mr. Tate's transfer to RCI.  Mr. Tate was not provided a hearing regarding the transfer.

Additionally, Mr. Tate cites the history of the Ohio inmate grievance system.  Specifically, Mr. Tate refers to a report issued on or about 2001 that details an "unacceptably high level of retaliation against inmates who seek to access the grievance procedure ...."  (Id. ¶¶103-11.)  Mr. Tate claims that Mr. Wilkinson has failed to enforce or adopt any new regulations to address the problem.

In all, Mr. Tate makes the following claims (reproduced verbatim):

> Defendant Joe Williams violated plaintiff's rights and constituted general and direct retaliation by using the disciplinary procedures as a method of retaliation, denying plaintiff of substantive and procedural due process, and subjecting him to cruel and unusual punishment, in violation of the First, Eighth and Fourteenth Amendments.
>
> Defendant Dr. Joes Ventosa violated plaintiff's rights and constituted direct and general retaliation and denial of substantive and procedural due process, in violation of the First and Fourteenth Amendments.

3

Defendant Lt. Frizzell violated plaintiff's rights and constituted general and direct retaliation, failure to protect, cruel and unusual punishment, and a denial of substantive and procedural due process, in violation of the First, Eighth and Fourteenth Amendments.

Defendant Sgt. Tony Wittekind violated plaintiff's right and constituted general and direct retaliation, and denial of substantive and procedural due process, in violation of the First and Fourteenth Amendments.

Defendant Jeffrey Wolfe violated plaintiff's rights and constituted general and direct retaliation, failure to protect and denial of substantive and procedural due process, and cruel and unusual punishment, in violation of the First, Eighth and Fourteenth Amendments.

Defendant Reginald Wilkinson violated plaintiff's rights and constituted general and direct retaliation, failure to protect, cruel and unusual punishment, and denial of substantive and procedural due process, in violation of the First, Eighth and Fourteenth Amendments.

Defendant Michele Eberlin violated plaintiff's rights and constituted general and direct retaliation, failure to protect, cruel and unusual punishment, and denial of substantive and procedural due process, in violation of the First, Eighth and Fourteenth Amendments.

Defendant Williams Eleby violated plaintiff's rights and constituted general and direct retaliation, failure to protect, cruel and unusual punishment, and denial of substantive and procedural due process, in violation of the First, Eighth and Fourteenth Amendments.

(Complaint ¶¶120-27.)

## II.

When considering a motion to dismiss pursuant to Fed. R. Civ.

4

P. 12(b)(6), a court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Roth Steel Products v. Sharon Steel Corp., 705 F.2d 134, 155 (6th Cir.1983). When determining the sufficiency of a complaint in the face of a motion to dismiss, the court must apply the principle that "a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). See also, McLain v. Real Estate Bd. of New Orleans, Inc., 444 U.S. 232 (1980); Windsor v. The Tennessean, 719 F.2d 155, 158 (6th Cir.1983), cert. denied, 469 U.S. 826 (1984).

A motion to dismiss under Rule 12(b)(6) is directed solely to the complaint itself. Roth Steel Products, 705 F.2d at 155. Consequently, the Court must focus on whether the claimant is entitled to offer evidence to support the claims, rather than whether the plaintiff will ultimately prevail. Scheuer, 416 U.S. at 236. A federal court cannot consider extrinsic evidence in determining whether a complaint states a claim upon which relief can be granted. Roth Steel Products, 705 F.2d at 155. The Court will grant a defendant's motion to dismiss under Fed. R. Civ. P. 12(b)(6) if the complaint is without merit because of an absence of law to support a claim of the type made, or of facts sufficient to make a valid claim, or if on the face of the complaint there is an insurmountable bar to relief indicating that the plaintiff does not have a claim. See, generally, Rauch v. Day & Night Mfg. Corp., 576 F.2d 697, 702 (6th Cir.1978).

In defendants' motion to dismiss, defendants primarily argue that Mr. Tate has failed to exhaust all administrative remedies under the Prison Litigation Reform Act ("PLRA") prior to bringing this action. In the alternative, if the Court concludes that Mr.

Tate did properly exhaust, defendants contend that the claims against Mr. Wilkinson, Mr. Wolfe, Ms. Eberlin, Mr. Wolfe, Mr. Wittekind, Mr. Frizzell and Mr. Eleby are based on the doctrine of *respondeat superior*, and, because vicarious liability cannot be extended under §1983, those defendants must be dismissed from the lawsuit. Finally, defendants claim that Mr. Tate's retaliation claims must fail because Mr. Tate did not engage in protected conduct and that no action was taken against him that would deter a person of ordinary firmness from continuing to engage in such conduct.

On the other hand, Mr. Tate claims that he exhausted all required administrative remedies prior to filing suit in this Court. Further, Mr. Tate argues that the defendants fail to characterize properly Mr. Tate's claims against the defendants. Mr. Tate argues that he is not relying on the doctrine of *respondeat superior* to attach liability to certain defendants. Instead, Mr. Tate states that all claims are brought against each defendant based on each defendant's personal retaliatory actions. Mr. Tate also contends that his constitutional due process rights were violated because he was never afforded a fair hearing when he was transferred and/or disciplined. Finally, Mr. Tate alleges that his due process rights were violated when he was denied outdoor exercise and that he was subjected to cruel and unusual punishment when denied dental floss.

### III. *Exhaustion*

The Prison Litigation Reform Act requires that a prisoner exhaust administrative remedies before filing suit in the district court. It states: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). The plaintiff-

6

prisoner has the burden of proving that all administrative remedies are exhausted, Baxter v. Rose, 305 F.3d 486, 488 (6th Cir.2002), and, for proof, documentation, if available, must be attached to the complaint.  Brown v. Toombs, 139 F.3d 1102, 1004 (6th Cir.1999).  Finally, although exhaustion is not jurisdictional, it is a mandatory requirement imposed by statute.  Wyatt v. Leonard, 193 F.3d 876, 879 (6th Cir.1999).  A prisoner must exhaust all administrative remedies against each defendant that the prisoner seeks to sue.  See, e.g., Burton v. Jones, 321 F.3d 569, 574-575 (6th Cir.2003)(requiring a prisoner to file a grievance against each person he ultimately seeks to sue); Thomas v. Woolum, 337 F.3d 720 (6th Cir.2003)(same); Curry v. Scott, 249 F.3d 493 (6th Cir.2001)(same).

Ohio Administrative Code §5120-9-31 outlines a three-step procedure provided to Ohio inmates if they have grievances concerning any aspect of institutional life, including policies, procedures, conditions of confinement, or the actions of the institutional staff.  Ohio Admin. Code §§5120-9-31(A) and (J).  It should be noted, however, that the inmate grievance process is not a substitute appeal process for hearing officer decisions, rule infraction board decisions, or any other actions that already include an appeals process.  Id. at §5120-9-31(B).

When an inmate is utilizing the inmate grievance procedure, the inmate must first, within fourteen days of the date giving rise to the complaint, file an informal complaint with "the direct supervisor of the staff member, or department most directly responsible for the particular subject matter of the complaint." Id. at §5120-9-31(J)(1).  Second, if the inmate is dissatisfied with the informal complaint response, the inmate may file a notification of grievance with the inspector of institutional services.  Id. at §5120-9-31(J)(2).  Finally, if the inmate is dissatisfied with the disposition of the grievance, the inmate may

request an appeal to the chief inspector.  Id. at §5120-9-31(J)(3).
All stages of the proceeding require written responses from the
Department of Corrections.  If a prisoner wishes to file a
grievance against the warden, that grievance must be filed directly
with the office of the chief inspector.  Ohio Admin. Code §5120-9-
31(L).

*Denial of Dental Floss*

The Court will first address Mr. Tate's cruel and unusual
punishment claim for allegedly being denied the use of dental
floss.  It appears that Mr. Tate filed a notification of grievance
with the chief inspector's office on May 19, 2005.  The
notification of grievance indicated that Mr. Tate was denied the
use of dental floss while on segregated condition status.

Preliminarily, the Court concludes that the notification of
grievance should not have been filed directly with the chief
inspector.  As the notification of grievance indicates, the "staff"
denied Mr. Tate's right to use dental floss.  Thus, an informal
complaint, id. at §5120-9-31(J)(1), followed by a notification of
grievance, id. at §5120-9-31(J)(2) should have been filed against
the "staff" member that personally denied Mr. Tate's request.
Instead, Mr. Tate filed a notification of grievance directly with
the chief inspector, which circumvents the first two steps of the
inmate grievance procedure.

In the alternative, if Ms. Eberlin was the individual denying
Mr. Tate's request for dental floss as the complaint suggests, then
Mr. Tate was correct in filing the notification of grievance
directly with the chief inspector.[1]  Mr. Tate still failed to

_____

[1] The Court notes that Mr. Tate did file an informal complaint
against Ms. Eberlin, but he sent that informal complaint directly
to Ms. Eberlin, not the chief inspector.  Additionally, as the
informal complaint highlights, a dentist evaluated Mr. Tate's need
for dental floss and concluded that his mouth and gum health did
not warrant dental floss use.

exhaust properly, however, because the notification of grievance, while detailed in the amount of plaque and food that was lodged in Mr. Tate's teeth, failed to "show that the warden ... was personally and knowingly involved in a violation of law, rule or policy, or personally and knowingly approved or condoned such a violation." Id. at §5120-9-31(L). In fact, the notification of grievance does not even mention Ms. Eberlin or "the warden." Because the grievance does not allege the warden's involvement with the specificity required under the Ohio Administrative Code, Mr. Tate failed to exhaust properly any Eighth Amendment claim for the denial of dental floss.

*Denial of Exercise*

Mr. Tate filed a notification of grievance directly with the chief inspector alleging that Ms. Eberlin denied Mr. Tate the use of out-of-cell time. The complaint verifies these allegations. (Complaint at ¶¶78-83.) Assuming all the allegations in the complaint are true, as is required under the Fed.R.Civ.P. 12(b)(6) standard, it appears that Mr. Tate did correctly file the notification of grievance with the chief inspector because the warden, Ms. Eberlin, personally denied Mr. Tate's access to out-of-cell exercise. Further, the notification of grievance described in detail that Ms. Eberin was "was personally and knowingly involved in a violation of law, rule or policy, or personally and knowingly approved or condoned such a violation." Ohio Admin. Code §5120-9-31(L). Accordingly, Mr. Tate properly exhausted this claim.

IV. *Substantive Due Process*

In the instant case, Mr. Tate makes a "retaliation" claim under both the First Amendment and substantive due process. However, "[w]here a particular amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide

9

for analyzing these claims.'" <u>Thaddeus-X v. Blatter</u>, 175 F.3d 378, 387 (6th Cir.1999)(citing <u>Albright v. Oliver</u>, 510 U.S. 266 (1994)). In this case, given the claims that Mr. Tate is making - that he was punished for exercising what he believed to be his right to free speech - the First Amendment, not substantive due process, properly covers Mr. Tate's retaliation claims. <u>See id.</u> ("Here, the First Amendment properly covers the retaliation claims of X and Bell ... and so we turn to that framework for guidance"); <u>see also</u> <u>Tate v. Campbell</u>, 85 Fed.Appx. 413, 416 (6th Cir. Dec. 15, 2003) (unpublished)(identifying the difference between a general retaliation claim and a retaliation claim made under a specific constitutional right). Accordingly, the substantive due process claims should be dismissed.

## V. *First Amendment Retaliation*

In order to make out a successful First Amendment retaliation claim, an inmate must make a *prima facia* case proving that (1) the inmate engaged in protected conduct; (2) an adverse action was taken against the inmate that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) that the adverse action was motivated, at least in part, by the inmate's protected conduct. <u>Thaddeus-X</u>, 175 F.3d at 394. Once an inmate establishes a *prima facia* case for retaliation in violation of the First Amendment, the burden shifts to the defendants to prove that the same action would have been taken in the absence of protected activity. <u>Id.</u> at 399. In general, it is difficult for an inmate to establish the first prong of the First Amendment retaliation analysis because prison regulations are allowed to infringe on inmate's rights so long as they are rationally related to a legitimate penological interest. <u>Id.</u> at 395 (citing <u>Turner v. Safely</u>, 482 U.S. 78 (1987)). Thus, if an inmate violates a legitimate prison regulation, that inmate is not engaged in protected conduct and fails to establish a retaliation violation.

10

Id.

In the instant case, Mr. Tate claims three instances of retaliatory conduct. First, Mr. Tate claims that he was retaliated against for mailing a personal letter criticizing the NCI deputy warden. The second instance of alleged retaliation resulted from Mr. Tate's letter to Dr. Ventosa that indicated that Dr. Ventosa treated Mr. Tate differently because he was African-American. The third instance of alleged retaliatory conduct appears to involve Mr. Tate's alleged attempt to establish a relationship with an officer.[2]

*First Instance of Retaliatory Conduct*

It appears from the complaint that Mr. Tate was not engaged in protected conduct when he sent a letter criticizing the NCI deputy warden. Upon review of the letter, Mr. Williams determined that Mr. Tate was disrespecting the NCI warden in violation of Ohio Admin. Code §5120-9-6(31). It is important to note that Mr. Tate does not deny the fact that the letter criticized the NCI deputy warden. The Court concludes that penalizing inmates for disrespecting prison personnel is rationally related to a legitimate penological interest as well as ensuring safety and respect in the prison system. Because Mr. Tate was disrespecting the NCI deputy warden, he violated prison regulations and was not

_____

[2] The Court notes that the relevant section of the complaint also discusses Mr. Tate's informal complaint filed against Mr. Erdos, a shift commander. The informal complaint, which was reviewed and dismissed by prison personnel, allegedly arose out of Mr. Erdos' instructions not to "hang out" in the dining facility. However, upon review of the complaint, there appears to be no "adverse action" taken as a result of Mr. Tate's filing of the informal grievance in this matter. According to the complaint, all disciplinary action was initiated as a result of Rule Infraction Board's determination that Mr. Tate was attempting to establish a relationship with an officer. In fact, as Mr. Tate highlights, Mr. Erdos is not a party to this action and no claims are filed against him.

engaged in protected conduct.  Thus, it appears beyond a doubt that
Mr. Tate can prove no set of facts in support of his claim that he
was retaliated against for sending a criticizing letter about the
NCI deputy warden.

*Second Instance of Retaliatory Conduct*

In the second instance of retaliatory conduct, Mr. Tate sent
a letter to Dr. Ventosa that stated (reproduced verbatim): "The
only obvious difference between this inmate and I is that he is
White while I am African American." (Complaint, doc.#1-2.)  Again,
Mr. Tate was disciplined because the hearing officer concluded that
this comment was disrespectful in violation of Ohio Admin. Code
§5120-9-6(31) and that Mr. Tate "could have used a better choice of
words in the complaint[.]" (Id. ¶47.)

Unlike the first instance of retaliatory conduct, this is not
a simple job critique or criticism that is "disrespectful."
Instead, Mr. Tate complains of what he believes to be a racial
disparity among Dr. Ventosa's treatment of White and African-
American inmates.  The Court concludes, at this stage in the
litigation and assuming Mr. Tate's recital of the facts are true
and accurate, see Fed.R.Civ.P. 12(b)(6), that highlighting alleged
racial disparity, regardless of how the hearing officer evaluated
the statement, is, in this instance, protected conduct.  See, e.g.,
McKethan-Jones v. Ohio Dept. of Health, 7 Fed.Appx. 475, 482 (6th
Cir. March 27, 2001)(unpublished)(citing Connick v. Myers, 461 U.S.
138, 148 n.8 (1983)).  Further, according to the complaint, it
appears that Mr. Tate was subjected to adverse action because of
his letter.  Cf. Jackson v. Madery, 158 Fed.Appx. 656, 660 (6th
Cir. March 17, 2001)(unpublished)(being placed on modified access
status where inmate grievances were screened is not adverse
action).  Accordingly, Mr. Tate's second retaliatory conduct
appears to state a claim upon which relief could be granted.

*Third Instance of Retaliatory Conduct*

In this allegation of retaliation, Mr. Tate claims that because he filed a formal grievance against Mr. Erdos for "interfering with [Mr. Tate's] medical diet," Mr. Tate was placed in punitive segregation. (Complaint ¶¶50-54.) Additionally, Mr. Tate claims that he was transferred and the prison initiated an investigation into whether he attempted to establish a relationship with prison personnel. All of this, according to Mr. Tate, was in retaliation for filing the grievance against Mr. Erdos.

The Court of Appeals has stated that filing a grievance is protected conduct under the First Amendment. <u>Herron v. Harrison</u>, 203 F.3d 410, 415 (6th Cir.2000)(concluding that an inmate has an "undisputable First Amendment right to file grievances on his own behalf"). Based on this protected conduct and the allegations in the complaint that Mr. Tate suffered adverse actions for filing the grievance, (Complaint ¶¶50-72), it appears that Mr. Tate has pleaded a retaliation claim.

## VI. *Transfer of Prisons*

The Due Process Clause does not require a prisoner to receive a hearing prior to transfer. <u>Meachum v. Fano</u>, 427 U.S. 215 (1976). The <u>Meachum</u> Court noted:

> The Due Process Clause by its own force forbids the State from convicting any person of [a] crime and depriving him of his liberty interest without complying fully with the requirements of the Clause. But given a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution. *** The initial decision to assign the convict to a particular institution is not subject to audit under the Due Process Clause, although the degree of confinement in one prison may be quite different from that in another. The

13

conviction has sufficiently extinguished the defendant's liberty interest to empower the State to confine him in *any* of its prisons.

\* \* \*

Transfers between institutions, for example, are made for a variety of reasons and often involve no more than informed predictions as to what would best serve institutional security or the safety and welfare of the inmate. Yet under the approach urged here, any transfer, for whatever reason, would require a hearing as long as it could be said that the transfer would place the prisoner in substantially more burdensome conditions that he had been experiencing. We are unwilling to go so far.

<u>Id.</u> at 225-26.

Additionally, the Court of Appeals has stated, in numerous unpublished opinions, that the transfer from one prison to another prison cannot constitute a First Amendment retaliation violation because transferring an inmate would not deter a person of ordinary fairness from the exercise of his First Amendment rights. <u>Smith v. Yarrow</u>, 78 Fed.App. 529, 543 (6th Cir. Oct. 20, 2003)(unpublished)(citing <u>Mandela v. Campbell</u>, 181 F.3d 102, 1999 WL 357825 (6th Cir. May 26, 1999)(unpublished); <u>Goss v. Myers</u>, 208 F.3d 213, 2000 WL 125905 (6th Cir. Jan. 28, 2000)(unpublished); <u>Goddard v. Kentucky Dept. of Corr.</u>, 205 F.3d 1340, 2000 WL 191758 (6th Cir. Feb. 7, 2000)(unpublished); and <u>Herron v. Campbell</u>, 198 F.3d 245, 1999 WL 1045158 (6th Cir. Nov. 9, 1999)(unpublished)).

In the instant case, Mr. Tate argues that he was transferred from NCI to BCI without a hearing in violation of his due process rights. As indicated, however, the reach of the Due Process Clause does not extend to inmates that are transferred from one prison to another. Additionally, an inmate cannot make a retaliation claim under the First Amendment simply because that inmate is

14

transferred. Accordingly, the Court concludes that Mr. Tate's due process claim, as well as his First Amendment retaliation claim, for failing to receive a hearing prior to transfer must be dismissed for failing to state a claim upon which relief can be granted. It appears beyond a doubt that Mr. Tate can prove no set of facts in support of his claim which would entitle him to relief.

VII. *Placement in Disciplinary Cell/Local Control/Commissary Restrictions*

Mr. Tate alleges due process violations in disciplinary proceedings initiated by hearing officers and the RIB because Mr. Tate was not able to call witnesses or submit any evidence. Additionally, Mr. Tate claims that he did not receive adequate notice of the disciplinary hearings. As a result, Mr. Tate alleges that he was unconstitutionally found guilty and sentenced to time in the disciplinary cell, in local control and/or had his commissary rights restricted.

The United States Supreme Court held that prison disciplinary proceedings must meet minimal due process requirements by (1) giving inmates advance written notice of charges at least 24 hours prior to the disciplinary hearing; (2) providing the inmate with a written statement of evidence relied on and the reasons for the disciplinary action; and (3) allowing the inmate to call witnesses and present documentary evidence in the inmate's defense. Wolff v. McDonnell, 418 U.S. 539, 63-69 (1974). The right to call witnesses or present evidence, however, is not absolute. Id. at 566. The United States Supreme Court stated:

> [W]e must balance the inmate's interest[s]
> against the needs of the prison, and some
> amount of flexibility and accommodation is
> required. Prison officials must have the
> necessary discretion to keep the hearing
> within reasonable limits and to refuse to call
> witnesses that may create a risk of reprisal
> or undermine authority, as well as to limit
> access to other inmates to collect statements

15

> or to compile other documentary evidence.
> Although we do not prescribe it, it would be
> useful for the Committee to state its reason
> for refusing to call a witness, whether it be
> for irrelevance, lack of necessity, or the
> hazards presented in individual cases.

Id.

The holding in <u>Wolff</u> was limited in <u>Sandin v. Conner</u>, 515 U.S. 472 (1995). In <u>Sandin</u>, the Court examined whether a Hawaiian inmate was afforded constitutional due process when he was placed in segregation following a disciplinary hearing where the inmate was prohibited from calling witnesses. The Court opined:

> Following *Wolff*, we recognize that States may
> under certain circumstances create liberty
> interests which are protected by the Due
> Process Clause. But these interests will be
> generally limited to freedom from restraint
> which, while not exceeding the sentence in
> such an unexpected manner as to give rise to
> protection by the Due Process Clause by its
> own force, nonetheless imposes atypical and
> significant hardship on the inmate in relation
> to the ordinary incidents of prison life.
>
> * * *
>
> The punishment of incarcerated prisoners, on
> the other hand, serves different aims than
> those found invalid in *Bell* and *Ingraham*. The
> process does not impose retribution in lieu of
> a valid conviction, nor does it maintain
> physical control over free citizens forced by
> law to subject themselves to state control
> over the educational mission. It effectuates
> prison management and prisoner rehabilitative
> goals. Admittedly, prisoners do not shed all
> constitutional rights at the prison gate, but
> lawful incarceration brings about the
> necessary withdraw of limitation of many
> privileges and rights, a retraction justified
> by the considerations underlying our penal
> system. Discipline by prison officials in
> response to a wide range of misconduct falls
> within the expected parameters of the sentence

16

imposed by a court of law.

This case, though concededly punitive, does not present a dramatic departure from the basic conditions of Conner's indeterminate sentence. Although Conner points to dicta in cases implying that solitary confinement automatically triggers due process protection, this Court has not had the opportunity to address in an argued case the question whether disciplinary confinement of inmates itself implicates constitutional liberty interests. We hold that Conner's discipline in segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest. The record shows that, at the time of Conner's punishment, disciplinary segregation, with insignificant exceptions, mirrored those conditions imposed upon inmates in administrative segregation and protective custody. We note also that the State expunged Conner's disciplinary record with respect to the high misconduct charge nine months after Conner served time in segregation. Thus, Conner's confinement did not exceed similar, but totally discretionary, confinement in either duration or degree of restriction.

\* \* \*

Nor does Conner's situation present a case where the State's action will inevitably affect the duration of his sentence. Nothing in Hawaii's code requires the parole board to deny parole in the face of a misconduct record or to grant parole in its absence.

Id. at 483-87 (internal citations, brackets, quotations and footnotes omitted). Sandin changed a federal court's focus from analyzing state laws to determine if they create a liberty interest, see, e.g., Hewitt v. Helms, 459 U.S. 460 (1983), to determining if the penalty imposed creates an atypical and significant hardship to trigger due process protections, Sandin, 515 U.S. at 484.

The complaint indicates that Mr. Tate was denied access to present witnesses and documentary evidence on his behalf at three separate disciplinary hearings. These allegations are not controverted, nor do the defendants, at this stage in the litigation, offer reasons for denying Mr. Tate's request. Based on Sandin, the Court's focus is whether Mr. Tate suffered atypical and significant hardships to trigger due process protections. If, as a result of the alleged due process violations, the prison did not impose atypical or significant hardships, then there can be no due process protection or violation.

*First Instance of Alleged Denial of Due Process*

The first instance of an alleged due process violation arose when Mr. Tate was disciplined for sending the letter criticizing the NCI deputy warden. According to the complaint, Mr. Tate requested that Mr. Collins and the Chief Inspector be witnesses at the disciplinary hearing conducted by Mr. Frizzel. That request was denied, and Mr. Tate was found guilty of disrespecting an officer and sentenced to five days in the disciplinary cell.

The Sandin Court clarified that placement in the disciplinary cell or in insolation does not implicate the Due Process Clause because those type of confinements do not rise the level of an atypical or significant hardship. See, id. at 486; see also Sarmiento v. Hemingway, 93 Fed.Appx. 65, 66 (6th Cir. March 15, 2004)(unpublished)("Generally, unless placement in disciplinary confinement is accompanied by a withdrawal of good time credits or is for a significant period of time that presents an unusual hardship on an inmate, no interest to remain free of disciplinary confinement will be found in a case"); Bruggeman v. Paxton, 15 Fed.Appx. 202, 205 (6th Cir. June 20, 2001)(unpublished) ("[The inmates] placement in cell isolation and segregated confinement does not rise to the level of an atypical and significant hardship")(unpublished); Bradley v. Evans, 229 F.3d 1150, 2000 WL

18

1277229 (6th Cir. Aug. 23, 2000)(unpublished)(citing a litany of cases from other circuits that concluded disciplinary confinement did not rise to a due process violation).

Here, Mr. Tate was placed in disciplinary confinement for five days as a result of violating the Ohio Administrative Code for disrespecting prison personnel.  Because this minimal punishment did not impose an atypical or significant hardship on Mr. Tate, the denial of witnesses at the hearing that led to the punishment cannot be classified as a due process violation.  Accordingly, the Court recommends that this claim be dismissed.

*Second Instance of Alleged Denial of Due Process*

The second instance of an alleged due process violation arose when Mr. Tate was disciplined for sending the letter to Dr. Ventosa.  At the proceeding before the hearing officer, Mr. Wittekind, Mr. Tate requested the inspector of institutional services as a witness.  Additionally, Mr. Tate requested to submit certain sections of the Ohio Administrative Code as evidence.  Both requests were denied, and Mr. Tate was found guilty of disrespecting an officer and sentenced to fifteen days of commissary restriction.

The Court reaches a similar conclusion in regards to the alleged denial of due process stemming from the second instance of retaliation.  In this allegation, Mr. Tate claims that he was denied due process and sentenced to fifteen days of commissary restriction.  As a result of this penalty, Mr. Tate claims that he "was prohibited from [p]urchasing supplemental food items [and] stamped envelopes to maintain his correspondences ...." (Complaint ¶49.)  Being denied commissary access cannot be classified as an atypical and significant hardship.  See, e.g., Malchi v. Thaler, 211 F.3d 953, 958 (5th Cir.2000)(loss of commissary privileges, along with other forms of discipline, did not trigger due process protections; Reynolds v. Williams, No. 06-2310, 2006 WL 2683442

19

(3rd Cir. Sept. 19, 2006)(unpublished).  While Mr. Tate may be denied the opportunity to purchase additional food, for example, nowhere does he allege that he was denied an entire meal as a result of this discipline.  Thus, the Court recommends that this claim be dismissed.

### Third Instance of Alleged Denial of Due Process

Mr. Tate's final claim of due process violation arose from the RIB hearing that investigated Mr. Tate's attempt to establish a relationship with an officer.  According to the complaint, Mr. Tate requested several witnesses to testify that he was authorized to talk to the officer.  Mr. Tate also requested that the officer in question testify at the hearing.  According to the complaint, Mr. Tate wanted to use her testimony to "expose the fabrications" of the conduct report filed against him, (Complaint ¶60), but all requests to submit evidence or call witnesses were denied.  The RIB panel found Mr. Tate guilty and sentenced him to fifteen days in the disciplinary cell and placed him on local control. Additionally, Mr. Tate claims that he was granted parole in February 2005, but as a result of this RIB conviction, his parole was rescinded and Mr. Tate was ordered to fulfill his maximum sentence.

Preliminarily, the Court concludes, based on the same rationale described in the *First Instance of Alleged Denial of Due Process*, *supra*, that Mr. Tate's placement in disciplinary confinement for fifteen days and his placement on local control are not atypical and significant hardships that jeopardize due process protections.

Further, the Court concludes that the Due Process Clause was not violated when, as a result of this RIB conviction, Mr. Tate's parole was rescinded.  First, there was no violation of the Due Process Clause at the RIB hearing.  Second, like Hawaii's parole system in <u>Sandin</u>, <u>see</u> <u>Sandin</u>, 517 U.S. at 487, Ohio has created a

20

completely discretionary parole release system, O.R.C. §2967.03;
Ohio Admin. Code 5120:1-1-07; see, Swihart v. Wilkinson, No. 05-
4269, 2006 WL 3368823 (6th Cir. Nov. 21, 2006)(unpublished);
Saunders v. Williams, 89 Fed.Appx. 923, 924 (6th Cir. Dec. 10,
2003)(unpublished).   There is no constitutional right to be
released on parole, Greenholtz v. Inmates of Neb. Penal & Corr.
Complex, 442 U.S. 1, 7 (1979), or for the State to have a parole
system, Pennsylvania v. Finley, 481 U.S. 551 (1987).  Due process
protections under Sandin affect the manner in which a prisoner is
confined and do not touch upon the protections guaranteed at a
parole hearing.  Swihart, 2006 WL 3368823, at *2 ("This Court has
never held that an inmate's eligibility for parole at a certain
time, under a discretionary parole system, is an 'atypical and
significant hardship.' [The inmate's] eligibility or non-
eligibility for parole does not affect the manner in which he is
confined and, thus, no liberty interest is implicated").  Finally,
whereas in Wolff, the state created a liberty interest in good time
credit that resulted in due process protections, Wolff, 418 U.S. at
557, Ohio has not created a liberty interest in parole.  The Court
finds no line of cases extending Sandin's reach to cover indirectly
situations where a parole board, acting independently of a RIB,
chooses to rescind an inmate's parole based on violations of prison
regulations.

     Viewing Mr. Tate's complaint in a light most favorable to him
and accepting all well-pleaded material allegations in the
complaint as true, the Court recommends that Mr. Tate's alleged due
process violations resulting from the first, second, and third
instances of retaliation be dismissed.

VIII. *Due Process Violations Resulting from the Inmate Grievance*
*Procedure*

     In Mr. Tate's final two claims in the complaint, he appears to
argue that Mr. Wilkinson has failed to address the excessive number

of retaliation claims made by Ohio inmates.  Additionally, Mr. Tate alleges that there is no method to challenge a conduct report.  It appears that these claims are brought under both the Eighth and Fourteenth Amendments.

Mr. Tate has a significant Article III problem in attempting to address other inmates' abilities to file retaliation lawsuits. He simply lacks standing to assert their rights under Thaddeus-X, and its progeny, as well as Ohio Admin. Code §5120-9-31 and the PLRA.  There are multiple ways both administratively within the prison system and legally, within the court system, for inmates to file grievances and lawsuits to challenge retaliatory action and conditions of confinement.  Other prisoners are therefore able to raise and litigate their claims of retaliation.  Consequently, with regards to the last two claims against Mr. Wilkinson for "pervasive retaliation" and other Fourteenth Amendment violations, it appears beyond a doubt that Mr. Tate lacks standing to pursue this claim, at least to the extent that he is attempting to assert the rights of any prisoner other than himself.  See, Herron, 203 F.3d at 415 (concluding that an inmate has an "undisputable First Amendment right to file grievances *on his own behalf*")(emphasis added).

### IX. *Failure to Protect*

In order for an inmate to establish liability under the Eighth Amendment for failure to protect, an inmate must prove that a prison official was deliberately indifferent to a substantial risk of bodily harm.  Greene v. Bowles, 361 F.3d 290, 294 (6th Cir.2004) (citing Farmer v. Brennan, 511 U.S. 825, 828 (1994)).  A review of Mr. Tate's complaint reveals only one instance that can be construed as "substantial risk of bodily harm," and that instance was the denial of dental floss.  As indicated, *supra*, however, Mr. Tate failed to exhaust that claim.  Therefore, Mr. Tate failed to exhaust the failure to protect claim also associated with the alleged denial of dental floss.

22

The Court notes that all other claims in the complaint do not involve or allege a substantial risk of bodily harm.  Thus, the failure to protect claims should be dismissed because Mr. Tate can prove no set of facts in support of his claim which would entitle him to relief.

X.

Based on the foregoing, the Court RECOMMENDS that the motion to dismiss (doc. #9) be GRANTED IN PART and DENIED IN PART.  The Court RECOMMENDS that the following claims be dismissed from the lawsuit either because the claims were not exhausted[3] or because Mr. Tate can prove no set of facts in support of his claim which would entitle him to relief: (1) all failure to protect claims; (2) all substantive due process claims; (3) the first retaliation claim; (4) the Eighth Amendment claims involving the denial of dental floss; (5) all due process claims associated with transferring prisons; (6) all alleged due process violations associated with the first, second, and third instances of retaliation where Mr. Tate claimed lack of notice and denial of his ability to call witnesses and evidence; and (7) the last two claims involving due process and the inmate grievance procedure.

The Court also RECOMMENDS that Mr. Tate's claims against Mr. Eleby be dismissed, and Mr. Eleby be DISMISSED from the lawsuit.

The Court RECOMMENDS that the only claims remaining should be the second and third First Amendment retaliation claims as well as the denial of exercise claim.  The only defendants that should be remaining are those that are directly involved in the remaining

---

[3] The Court declines to utilize the "total exhaustion rule" as the defendants requests.  See Hartsfield v. Vidor, 199 F.3d 305 (6th Cir.1999); Burton, 321 F.3d 569; Bey v. Johnson, 407 F.3d 801 (6th Cir.2005); Spencer v. Bouchard, 449 F.3d 721 (6th Cir.2006) ("Because Hartsfield and Burton were decided before Bey, we conclude that the partial-exhaustion rule is the law of this circuit").

claims,[4] which are Dr. Ventosa, Mr. Wittekind, Mr. Williams, Mr. Frizzel, Mr. Wolfe, Ms. Eberlin, and Mr. Wilkinson.

If any party objects to this Report and Recommendation, that party may, within ten (10) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operate as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 f.2d 947 (6th Cir.1981).


/s/ Terence P. Kemp
United States Magistrate Judge

---

[4] It is well-settled that in §1983 litigation, the liability of supervisory personnel must be based on more than merely the right to control employees.  Monell v. Dept. of Social Services, 436 U.S. 658 (1978); see also Hays v. Jefferson County, 668 F.2d 869, 872 (6th Cir.1982); Combs v. Wilkinson, 315 F.3d 548 (6th Cir.2002). In order to establish §1983 liability, there must be a direct causal link between the acting defendants and the supervisory defendants.  Hays, 668 F.2d at 872 (citing Rizzo v. Goode, 423 U.S. 362, 603-04 (1976)).