```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                       EASTERN DIVISION
```

Phillip Tate,                   :

        Plaintiff,       :   Case No. 2:06-cv-0047

  v.                            :   JUDGE SMITH

Joe Williams, et al.,           :   MAGISTRATE JUDGE KEMP

        Defendants.      :

## OPINION AND ORDER

This prisoner civil rights case is before the Court on an objection to the Magistrate Judge's Report and Recommendation filed by Phillip Tate, a plaintiff proceeding *pro se*. On January 10, 2007, the Magistrate Judge issued a Report recommending that the defendants' motion to dismiss be granted in part and denied in part. The Magistrate recommended that all claims be dismissed except for the second and third First Amendment retaliation claims as well as the denial of exercise claim. The Report also recommended dismissal of all defendants except those directly involved with the remaining claims. On January 19, 2007, Mr. Tate filed objections to the Magistrate Judge's Report. The Court has reviewed Mr. Tate's eight objections *de novo*. For the following reasons, the objections will be overruled and the Magistrate Judge's Report and Recommendation will be adopted in its entirety.

### I. Motion to Dismiss Standard

Mr. Tate claims that the Magistrate Judge failed to use the proper legal standard when evaluating the defendants' motion to dismiss pursuant to Rule 12(b)(6). The objection states that "[t]he Magistrate's R&R meticulouly lays out the scope and workings of FRCP 12(b)(6) review, yet, makes no mention or application of the Rule's requirement that all doubts and inferences are to be resolved in the pleader's favor." (Objection (doc. #15) at p. 2

(reproduced verbatim).)

On pages 4-5 of the Report, the Magistrate Judge correctly recites the Rule 12(b)(6) standard. Particularly, the Magistrate Judge states "[w]hen considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true." (Report and Recommendation (doc. #13) at pp. 4-5 (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Roth Steel Products v. Sharon Steel Corp., 705 F.2d 134, 155 (6th Cir.1983)).) That standard was then applied to each claim. In any event, this Court's de novo review will apply the correct legal standard. Accordingly, this objection is overruled.

II. Exhaustion of the Denial of Dental Floss Claim

Mr. Tate argues that the Magistrate Judge erred when he recommended dismissal of the denial of dental floss claim for failure to exhaust. Mr. Tate's argument on this point is unpersuasive. As the Magistrate Judge noted, Mr. Tate filed a grievance directly with the chief inspector alleging that "staff" denied Mr. Tate the use of dental floss. There are exhaustion problems depending on who is identified as the "staff" person involved. On the one hand, if the "staff" involves prison officials, not including the warden, then Mr. Tate was required to follow the three-step grievance process outlined in Ohio Admin. Code § 5120-9-31(J). On the other hand, if the "staff" person was the warden, then Mr. Tate was required to file the grievance against the warden directly with the chief inspector and state in the grievance that the "warden ... was personally and knowingly involved in a violation of law, rule or policy, or personally and knowingly approved or condoned such a violation." Ohio Admin. Code § 5120-9-31(L).

Mr. Tate did not follow the three-step grievance procedure in

2

this instance. Consequently, he failed to exhaust properly all administrative remedies if the "staff" injuring him did not include the warden. Moreover, if the "staff" was the warden, a review of the grievance filed directly with the chief inspector reveals that Mr. Tate did not even identify the warden, let alone show that the warden was personally and knowingly involved in a violation of law, rule or policy, or personally and knowingly approved or condoned such a violation. In both instances, Mr. Tate failed to exhaust.

The Court's decision to dismiss the dental floss claim for failure to exhaust is consistent with the recent Supreme Court decision in Jones v. Bock, __U.S.__, 127 S.Ct. 910 (2007). Jones held, *inter alia*, that the PLRA does not impose a "name all defendants" requirement. Id. at 922. However, the Supreme Court noted that, while the PLRA does not have such a requirement, individual state administrative codes may require inmates to plead grievances with particularity, and an inmate must follow these procedures in order to exhaust all administrative remedies. Id.; see also Woodford v. Ngo, __U.S.__, 126 S.Ct. 2378, 2386 (2006)("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings")(footnote omitted). The Court opined:

> *Woodford* held that "proper exhaustion" was required under the PLRA, and that this requirement was not satisfied when grievances were dismissed because prisoners had missed deadlines set by the grievance policy. At the time each of the grievances at issue here was filed, in contrast, the MDOC policy did not contain any provision specifying who must be named in a grievance. MDOC's policy required only that prisoners "be as specific as possible" in their grievances, while at the same time the required forms advised them to "[b]e brief and concise." The MDOC grievance

> form does not require a prisoner to identify a particular responsible party, and the respondent is not necessarily the allegedly culpable prison official, but rather an administrative official designated in the policy to respond to particular types of grievances at different levels. *** Nothing in the MDOC policy itself supports the conclusion that the grievance process was improperly invoked simply because an individual later named as a defendant was not named at the first step of the grievance process.
>
> Nor does the PLRA impose such a requirement. In *Woodford*, we held that to properly exhaust administrative remedies prisoners must "complete the administrative review process in accordance with the applicable procedural rules," rules that are defined not by the PLRA, but by the prison grievance process itself. Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to "properly exhaust." The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

Id. at 922-23 (internal citations omitted).

As noted above, Mr. Tate failed to exhaust all Ohio administrative remedies because he failed to follow the three-step process if the warden was not involved, Ohio Admin. Code § 5120-9-31(J), and failed to state the warden's involvement with the particularity required by Ohio Admin. Code § 5120-9-31(L) if the warden was involved. The Court's decision is not based on the PLRA itself, but is rooted in the fundamental requirement that Mr. Tate must properly exhaust all administrative remedies in accordance with the procedures created under Ohio law. Whereas in Jones, the MDOC policies did not require such particularity or process, see Jones, __U.S.__, 127 S.Ct. at 922, Ohio administrative rules

4

outline the proper grievance steps in order to complete and exhaust all administrative remedies prior to filing suit. Accordingly, this objection is overruled.

### III. Substantive Due Process Claim

Mr. Tate argues that the Magistrate Judge erred by recommending dismissal of his substantive due process claims. Mr. Tate cites no relevant case law and makes no persuasive argument that the Magistrate Judge erred in concluding that "[w]here a particular amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" Thaddeus-X v. Blatter, 175 F.3d 378, 387 (6th Cir.1999)(citing Albright v. Oliver, 510 U.S. 266, 273 (1994)). It is obvious from the complaint that Mr. Tate alleges First Amendment retaliation claims, and thus the First Amendment, not the Fourteenth Amendment, should be the guidepost in the Court's analysis. The Court rejects this argument under the same premise as the Magistrate Judge.

### IV. Retaliation

*First Instance*

It appears that Mr. Tate offers no new and relevant case law or arguments on why or how the Magistrate Judge erred in dismissing the First Instance of Retaliatory conduct. As the Magistrate Judge noted, "penalizing inmates for disrespecting prison personnel is rationally related to a legitimate penological interest as well as ensuring safety and respect in the prison system." (Report and Recommendation (doc. #13) at p. 11.) According to the record, Mr. Tate sent a disrespectful letter to a prison official. Mr. Tate does not dispute this. Disrespecting a prison official is why Mr. Tate was punished. Thus, Mr. Tate has not adequately alleged that he was engaged in protected conduct in order to raise a First

5

Amendment retaliation claim. <u>Thaddeus-X</u>, 175 F.3d at 394.

*Second Instance*

Upon review of the objection, the Court concludes that this objection must have been made in error, because the Magistrate Judge recommended that Mr. Tate's Second Instance of Retaliation claim survived the defendants' motion to dismiss.

V. <u>Transferring Prisons</u>

Mr. Tate argues that the Report and Recommendation is contradictory on this issue because it concludes, on the one hand, that Mr. Tate adequately alleged that he engaged in protected conduct in the Second and Third Instances of Retaliatory Conduct, but, on the other hand, it concluded that he failed to plead a legally cognizable claim for being transferred from one prison to another. The Court overrules this objection for the reasons highlighted in the Magistrate Judge's Report. There are countless cases that have found no constitutional violation when a prisoner is transferred from one prison to another without a hearing or allegedly in retaliation for having engaged in speech or conduct protected by the First Amendment. <u>See</u>, e.g., <u>Meachum v. Fano</u>, 427 U.S. 215 (1976)(due process hearing not required prior to transfer); <u>Smith v. Yarrow</u>, 78 Fed.Appx. 529, 543 (6th Cir. Oct. 20, 2003)(unpublished)(transferring prisons cannot violate First Amendment because transfer would not deter a person of ordinary fairness from exercising his rights); <u>Goss v. Myers</u>, 208 F.3d 213, 2000 WL 125905 (6th Cir. Jan. 28, 2000)(unpublished)(same).

VI. <u>Disciplinary Cell, Local Control, and Commissary Restrictions</u>

Mr. Tate presents no new relevant argument as to how the Magistrate Judge erred in recommending dismissal of Mr. Tate's due process claims for being placed in the disciplinary cell, on local control or instituting commissary restrictions. In support of his position, Mr. Tate cites <u>Ortiz v. Voinovich</u>, 211 F.Supp.2d 917 (S.D. Ohio 2002). However, <u>Ortiz</u> is distinguishable from the

6

instant case. In Ortiz, the court found that a reasonable jury could conclude that placing the defendant in security control was pretextual, in light of the fact that inmates are placed in security control only if they pose a threat to the prison or inmates. Ortiz was placed in security control for violating a gag order. There are no similar allegations in the instant case. In fact, the Magistrate Judge identified each punishment imposed on Mr. Tate and identified relevant case law relating these incidents to similar punishments where no due process right was implicated. Thus, this objection will be overruled.

## VI. Parole

The Court notes that Mr. Tate does not highlight a specific error of law or fact by the Court in its determination that Ohio has not created a liberty interest in parole or that there is no constitutional right to be released on parole. Instead, Mr. Tate argues that "his parole release was rescinded and plaintiff continued four (4) years as an adverse sanction in retaliation for his filing of a complaint." (Objection (doc. #15) at p. 12.) After a de novo review, the Court concludes that the Magistrate Judge was correct in his determination that the parole board, acting independently of any Rules Infractions Board, chose to rescind Mr. Tate's parole based on violations of prison regulations. No constitutional protections, if they ever existed, were jeopardized in this determination. Thus, the objection is overruled.

## VII. Failure to Protect

Mr. Tate again alleges that the denial of dental floss claim should proceed because he properly exhausted all administrative remedies for that claim. Therefore, Mr. Tate claims that because the denial of dental floss claim should proceed, so should the failure to protect claim arising from it. As indicated, *supra*, however, Mr. Tate failed to exhaust the denial of dental floss

7

claim.  Thus, the failure to protect claim arising from it was also not exhausted.  The objection is overruled.

## VIII. Conclusion

Based on the foregoing, Mr. Tate's objections regarding the (1) Rule 12(b)(6) standard, (2) exhaustion of the denial of dental floss; (3) retaliation, (4) transferring prisons, (5) disciplinary cell, local control and commissary restrictions, (6) parole, (7) and (8) failure to protect are OVERRULED.  The Court adopts the Magistrate Judge's Report and Recommendation in its entirety.

The following claims are dismissed from the lawsuit either because the claims were not exhausted or because Mr. Tate can prove no set of facts in support of his claim which would entitle him to relief: (1) all failure to protect claims; (2) all substantive due process claims; (3) the first retaliation claim; (4) the Eighth Amendment claims involving the denial of dental floss; (5) all due process claims associated with transferring prisons; (6) all alleged due process violations associated with the first, second, and third instances of retaliation where Mr. Tate claimed lack of notice and denial of his ability to call witnesses and evidence; and (7) the last two claims involving due process and the inmate grievance procedure.  Additionally, Mr. Tate's claims against Mr. Eleby are dismissed, and Mr. Eleby is DISMISSED from the lawsuit.

The only claims remaining are the second and third First Amendment retaliation claims as well as the denial of exercise claim.  The only defendants remaining are those that are directly involved in the remaining claims, which are Dr. Ventosa, Mr. Wittekind, Mr. Williams, Mr. Frizzel, Mr. Wolfe, Ms. Eberlin, and Mr. Wilkinson.

/s/ George C. Smith
George C. Smith
United States District Judge